UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**THEODORE PLAJER,**

    **Plaintiff,**

v.                                                                        **Case No. 8:06-cv-84-T-TBM**

**MICHAEL J. ASTRUE,**[1]
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
                                         /

**O R D E R**

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was fifty-two years of age at the time of his first administrative hearing. He stands 5', 10" tall and weighed 235 pounds. Plaintiff has an eighth-grade education. His past relevant work was as a machine operator, baker, and metal finisher. Plaintiff applied for disability benefits in January 1998, alleging disability as of October 31, 1997, by reason of limitations related to severe low back pain and hernias. The Plaintiff's application was denied originally and on reconsideration.

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ") on September 13, 1999. The Plaintiff testified he was unable to perform any work by reason of severe and constant back pain that restricted his ability to bend, lift, and twist. However, on the basis of a conclusion that the Plaintiff had the ability to perform a limited range of light exertional work and given vocational expert testimony identifying jobs available to the Plaintiff, the ALJ denied Plaintiff's application for benefits by decision dated November 2, 1999. (R. 12-21). Ultimately, the decision was appealed to the United States District Court for the Northern District of Indiana. By a decision dated May 30, 2001, the Commissioner's decision was reversed and the case was remanded for further consideration consistent with the court's Order. (See R. 320-332). Thereafter the Appeals Council remanded the case for further proceedings consistent with the court's Order. (R. 333-334).

The Administrative hearing on remand was conducted May 15, 2002. The Plaintiff was represented by counsel and the court took testimony from a vocational expert (hereinafter "VE") and one other witness. The Plaintiff essentially confirmed his prior testimony that he suffered from constant sharp back pain that was aggravated when he sat, walked, or stood for long periods of time. He confirmed that standing and walking for more than ten to fifteen minutes and sitting for more than thirty minutes resulted in pain. He again indicated that he could lift no more than five pounds without pain. According to the Plaintiff, his condition had worsened during the interim period. Plaintiff claimed even greater limitations related to his ability to take care of his personal needs, to help around the house and to drive. Plaintiff

challenged the findings of his treating doctors, whom the ALJ noted had all determined that Plaintiff was capable of working, by noting that they all work for the insurance company. Plaintiff indicated that he was still receiving treatment from the VA and that he was totally disabled. Plaintiff testified he is unable to sleep through a full night due to his back pain. Although he has tried different medications, his back continues to hurt. Plaintiff complained that he sweats, sometimes gets dizzy, and that his pain medication, Oxycontin, makes him drowsy. Plaintiff acknowledged that he continued to drive as necessary. By his account, he can drive about an hour before he has to stop for fifteen to twenty minutes to stretch his legs, which go to sleep and get numb. In describing his activity at home, Plaintiff indicated that he sits for a while, then gets up and walks around, and then must lie down. By his testimony, he must repeat this cycle throughout the day. Lifting a gallon of milk hurts his back, and he is unable to bend. Plaintiff has discussed surgery with a physician, but the odds of recovery were not sufficient to prompt him to undergo the procedure. According to the Plaintiff, he was presently receiving VA benefits on the basis of his total disability. See Plaintiff's testimony (R. 356-65).

Witness Eva Walker, Plaintiff's sister-in-law, testified that she had contact with the Plaintiff every day. By her observation, prior to his back problems, Plaintiff was on the go all the time and was full of life. Since developing back problems, Plaintiff's daily activities have been limited and he requires assistance with some of his personal needs. By the witness's observation, the Plaintiff has gained weight from his medication, despite a better diet. She indicated that he was not going to the store, performing jobs, dancing, or to going the movies

because of his difficulties.  She indicated he also has difficulty getting out of a vehicle. According to the witness, she has known Plaintiff for forty-seven years; he was a hard worker and someone always doing something around the house.  By her description, even minor activities like washing a few dishes causes him pain and discomfort.  See Ms. Walker's testimony (R. 365-66).

The ALJ again took testimony from VE Leonard Fisher.  The witness testified on an assumption of an individual of Plaintiff's age, education, and work history with the ability to perform light exertional work with limitations for only occasional postural movements such as bending, twisting, crawling, and climbing.  In this hypothetical, the witness opined that Plaintiff could not return to his former work but could perform the jobs of assembler, inspector, packager, electrical, information clerk, self-service gas station cashier, attendant, and cashier.  By the VE's testimony, the Plaintiff had acquired no transferrable skills, and if his limitations were as severe as he testified to, he would be unable to perform at any job.  See VE's testimony (R. 366-68).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These records are addressed herein as necessary.

By his decision of November 26, 2002, the ALJ determined that while Plaintiff has severe impairments related to back pain and recurrent hernias, prior to August 1, 2000, he retained the residual functional capacity to perform a limited range of light exertional work with limitations for occasional climbing, balancing, stooping, kneeling, and crawling. Based on that determination and VE testimony, the ALJ concluded that Plaintiff was able to perform

jobs that existed in significant numbers in the economy. However, subsequent to August 1, 2000, the ALJ concluded that Plaintiff could perform only sedentary work given his age, limited education, and lack of transferrable skills, and thus application of the Medical Vocational Guidelines directed a finding of disability. Accordingly, the Plaintiff was determined to be disabled and eligible for disability benefits beginning August 1, 2000. (R. 302-13). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d

1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that he has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The ALJ, in part, decided the Plaintiff's claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims.  See 20 C.F.R. §§ 404.1501, et seq.  These Regulations apply in cases where an individual's medical condition is severe enough to prevent them from returning to their former employment, but may not be severe enough to prevent them from engaging in other substantial gainful activity.  In such cases, the Regulations direct that an individual's residual functional capacity, age, education,

and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids." Id. at Part 404, Subpart P, Appendix 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. Id. at § 404.1569. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only. Id. at § 404.1569a.

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

### III.

The Plaintiff raises a single claim on this appeal. As stated by the Plaintiff, "[t]he Commissioner erred in evaluating the Plaintiff's back complaints and his record of treatment with the Department of Veteran's Affairs." (Doc. 17 at 6). Essentially, Plaintiff complains that the medical record before the ALJ was ambiguous as to the onset date of disability and the ALJ erred by failing to develop a full and fair record because he did not obtain a medical expert to assist in determining the appropriate onset date. By Plaintiff's argument, because his condition was progressive, as reflected throughout his medical records, it was inappropriate for the ALJ to infer the August 1, 2000, onset date without the assistance of a medical advisor.

Plaintiff urges that the case be remanded again for the taking of additional evidence from a medical expert on the point of his alleged onset date. (Doc. 17).

In response, the Commissioner urges that the decision reflects a proper analysis on this issue. Thus, the ALJ accepted the VA's determination that Plaintiff could only perform sedentary work as of August 1, 2000, and upon that conclusion, the Medical Vocational Guidelines dictated a finding that Plaintiff was disabled. By the Commissioner's argument, the analysis performed by the ALJ was entirely consistent with Social Security Ruling 83-20 and supported by the medical evidence. Thus, by the Commissioner's review of the medical record, nothing suggested that Plaintiff was disabled prior to August 1, 2000, and the ALJ's conclusion that disability begin August 1, 2000, is consistent with the record, as well as the conclusions of the VA. Under these circumstances, the Commissioner urges that no additional medical expert opinion was required. (Doc. 18).

Social Security Ruling 83-20, at issue in this case, prescribes the policy and procedure by which the Commissioner should determine the onset date of disability under the provisions of Titles II and XVI of the Social Security Act and implementing regulations. See SSR 83-20, 1983 WL 31249, * 1 (S.S.A.). The ruling provides in pertinent part:

> Onset in Disabilities of Nontraumatic Origin
>
> In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity.
>
> ***
> The medical evidence serves as the primary element in the onset determination.

8

> \*\*\*
> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling.  Determining the proper onset date is particularly difficult, when for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available.  In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.
> \*\*\*
> Precise Evidence Not Available--Need for Inferences
> \*\*\*
> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working.  How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.  This judgement, however, must have a legitimate medical basis.  *At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.*

SSR 83-20, * 2-3.  The Social Security Administration's rulings are not binding on this court, however, they are accorded deference.  See Fair v. Shalala, 37 F.3d 1466, 1469 (11th Cir. 1994); B.B. ex. rel. A. L. B. v. Schweiker, 643 F.2d 1069, 1071 (5th Cir. 1981).[2]

The Eleventh Circuit has not discussed or applied the provision of SSR 83-20 at issue in this case, i.e., that which addresses when an ALJ should obtain the services of a

---

[2]The Eleventh Circuit, in an en banc decision, Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

medical advisor at hearing.³ However, all circuits that have addressed this issue have concluded that an ALJ must call a medical advisor to assist in determining the claimant's onset date only where there is no contemporaneous medical documentation and the evidence [regarding the slowly progressive impairment] is ambiguous as to the possibility that the onset of disability occurred before the expiration of the claimant's insured status. See Newell v. Comm'r of Social Security, 347 F.3d 541, 548-49 (3d Cir. 2003); Bailey v. Chater, 68 F.3d 75, 79 (4th Cir. 1995); Spellman v. Shalala, 1 F.3d 357, 362-63 (5th Cir. 1993); McClanahan v. Comm'r of Social Security, 474 F.3d 830 (6th Cir. 2006), 2006 WL 3951833, * 5; Pugh v. Bowen, 870 F.2d 1271, 1278 n. 9 (7th Cir. 1989); Grebenick v. Chater, 121 F.3d 1193, 1201 (8th Cir. 1997); Morgan v. Sullivan, 945 F.2d 1079, 1082-83 (9th Cir. 1991); Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995); see also May v. Social Security Admin. Comm'r, 125 F.3d 841, 1997 WL 616196, * 1 (1st Cir. 1997) (unpublished); Thomas v. Chater, 104 F.3d 356, 1996 WL 730490, * 2 (2d Cir. 1996) (unpublished).

      Upon review of the record, I conclude that the ALJ did not err by failing to call a medical advisor at the hearing because the record documented contemporaneous medical records. As stated above, the ruling contemplates that a medical advisor need be called only in cases where there is no contemporaneous medical documentation. See SSR 83-20 ("in some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred *some time prior to the date of the first recorded medical examination*"). Here, there is contemporaneous medical evidence during the period at

---

³Regardless of whether Eleventh Circuit or Sixth Circuit substantive law applies in this case, the result is the same.

issue, October 31, 1997, Plaintiff's alleged onset date, through August 1, 2000, the date on which the ALJ found Plaintiff disabled. In October 1997, Dr. Wilbert Niles, an orthopedic surgeon, noted, "from my standpoint, . . . I do not see any restriction on work." (R. 10). In April and May 1998, Dr. Robert Yount, a treating neurosurgeon, opined that Plaintiff had a 25 pound lifting limitation and was to avoid bending at the waist and twisting. (R. 182-83, 197). In July 1998, Dr. Thomas Barbour examined Plaintiff at the request of the Administration. He noted that Plaintiff had a normal posture and gait; was able to walk on heels, toes and tandem walk; had unremarkable range of motion capacity except for dramatic limits in the lumbosacral spine; and had normal muscle strength and sensation to pin prick. (R. 184-85). In August 1998, a non-examining doctor opined that Plaintiff retained the capacity to perform light work with occasional postural limitations.[4] (R. 187-94). Treatment notes from the Veteran's Administration (hereinafter "VA") from February 1999 through September 1999 revealed decreased range of motion in the lumbar spine but no muscle spasm, spondylosis, or nerve root impingement.[5] See e.g., (R. 225, 253). However, as of August 1, 2000, Plaintiff was found to have met the disability requirements under the VA disability pension plan. (R. 350). Similarly, on August 10, 2000, Plaintiff's treating doctor from the VA, Dr. William Sabo, completed a form entitled "Statement of Medical Condition for Food Stamp and Temporary Assistance for Needy Family Programs," in which he opined that Plaintiff was unable to work due to a herniated disc at L4-5 and obesity. (R. 345).

---

[4]Although there a few medical opinions that conflict with these opinions, Plaintiff does not challenge the weight accorded to any of the medical opinions of record.

[5]The record does not include treatment notes from September 1999 to August 2001.

11

Further, contrary to Plaintiff's assertion that the ALJ improperly inferred the onset date of August 1, 2000, the ALJ found the onset date to be "consistent with the onset of disability established by the [VA], as well as with a statement made on August 10, 2000, by a physician for the claimant's eligibility for food stamps and temporary assistance." (R. 309). Thus, the ALJ's determination of Plaintiff's disability onset date was based on medical opinion evidence and therefore was not arbitrary, and his reliance on these opinions was not error. See Brady v. Heckler, 724 F.2d 914, 921 (11th Cir. 1984) (recognizing that, "[a]lthough the V.A.'s disability rating is not binding on the [Commissioner], it is evidence that should be given great weight.") (quoting Olson v. Schweiker, 663 F.2d 593 (5th Cir. 1981)). The ALJ also found the onset date reasonable in light of the fact that Plaintiff's steady and documented weight gain adversely affected his overall condition and ability to perform work-related activities, and in support thereof, the ALJ also noted that Dr. Sabo opined in May 2002 that Plaintiff's main problem was morbid obesity.[6] (R. 309).

In sum, there is no credible record evidence, medical or otherwise, that Plaintiff had disabling back pain limitations during the relevant period. Insofar as there is no evidence to support an onset date during the time at issue, i.e., between Plaintiff's alleged onset date of October 31, 1997, and onset date of disability found by the ALJ of August 1, 2000, the evidence was not ambiguous. Accordingly, the ALJ was not required to call a medical advisor at hearing to assist in determining the onset date. See McClanahan, 2006 WL 3951833, * 5

---

[6] Even assuming that the medical documentation during the periods at issue was insufficient, I find that the medical evidence documenting Plaintiff's back condition [and obesity] was not ambiguous as to whether such was disabling prior to August 1, 2000. There is simply no medical record of any disabling condition during the time period in question.

(holding that ALJ did not err by failing to obtain medical expert testimony on onset date because medical record was well developed and reviewed by ALJ).

### IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 1st day of March 2007.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record